### JESSE COLBURN *vs.* WILLARD P. PHILLIPS & others.

An agent may sue on a written agreement made by him in his own name in behalf of his principal.

It is no ground of demurrer to a declaration on a written agreement, which sets forth the agreement and a breach thereof, that for some of the items of damage claimed the plaintiff is not entitled to recover.

An action for breach of an agreement to ship merchandise at a certain freight, by shipping it at a higher freight, may be maintained without a previous demand upon the defendant for an allowance of the excess of freight, or a demand for the merchandise.

ACTION OF CONTRACT upon the following agreement: " Salem, Oct. 6, 1853. Agreed with Jesse Colburn of Tyngsborough to ship say two hundred tons of rough stone, weighing from one to two tons each, from Phillips's Wharf, to the port of Norfolk, Va., at the rate of $1.75 per ton of fourteen cubic feet, and as soon after they are received as a vessel can be procured, the measurement to be made up from the marks upon each stone.                              Phillips, Goodhue & Bowker.

" It is understood that Mr. Colburn shall not be liable for any expenses at Salem, except the charge of freight above specified.

" P., G. & B.

" To be delivered at Norfolk, Va., to the order of Gault & Brother.                                         P., G. & B."

The substance of the declaration and of the demurrer thereto, upon which the case was argued in writing, are stated in the opinion.

*S. H. Phillips & J. A. Gillis*, for the defendants.

*D. S. Richardson & W. A. Richardson*, for the plaintiff.

HOAR, J. The plaintiff made a written contract with the defendants to ship two hundred tons of stone from Phillips's Wharf in Salem to Norfolk, Va., at the rate of $1.75 a ton, as soon after they were received as a vessel could be procured, to be delivered in Norfolk, to the order of Gault & Brother; the plaintiff not to be liable for any expenses at Salem, except the freight as above specified. The plaintiff in his declaration alleges in substance that he made the contract on behalf and for the benefit of the firm of Gault & Brother, and their assigns, Gault & Christy; that he delivered the stone at Phillips's Wharf; but that the defendants did not ship it at the price agreed, but at a higher price; and that Gault & Christy paid the higher rate, under protest, on a part of the stone, and on the rest were compelled to pay it by process of the court of admiralty, with divers costs, expenses and counsel fees.

The defendants file an answer, denying some of the material allegations of the declaration; and insert in their answer a demurrer, which now comes before us for adjudication.

Four causes of demurrer are assigned. 1. That by the plain-

6 *

tiff's own showing the only cause of action belongs to Gault & Christy, and not to the plaintiff. In support of this it has been argued on the part of the defendants, that a promise made expressly to one who is only the agent of another, from whom the consideration wholly moves, will .not support an action in the name of the agent. Undoubtedly some support to this doctrine can be found in the *dicta* of judges in several reported cases, and there seems to be some confusion and inconsistency upon the subject in the cases themselves. But upon a careful examination it may appear, that while the reasons given for some of the decisions cannot be well reconciled, the decisions are for the most part harmonious, and can be sustained upon sound principles.

In *Gilmore* v. *Pope*, 5 Mass. 491, which was an action upon a subscription for shares in a turnpike company, with a promise to pay the assessments to the plaintiff, who was an agent of the company, the plaintiff was nonsuited, and Parsons, C. J. said : " The action cannot be maintained in the name of a mere agent of the corporation, as in this transaction the plaintiff has alleged himself to be ; there being no consideration, as between the agent and subscribers, to support an action of assumpsit." This remark of the chief justice would seem to assume that, to support a promise, the consideration must always move from the party to whom the promise is made. On examining the case, the promise is found to be a part of a contract to take and pay for shares in the turnpike road, in consideration of being admitted as associates in the corporation. This is very clearly a contract with the corporation. The promise is to pay the assessments to Gilmore or order ; but there is not in terms any promise to Gilmore himself. The apparent purport, then, as well as the legal effect of the instrument, was an agreement with the corporation from whom the consideration proceeded. It would therefore stand as a promise to A., upon a consideration received from A., to pay a sum of money to B. ; upon which it is now well settled in this commonwealth that B. can maintain no action, except under certain peculiar and limited conditions. *Mellen* v. *Whipple,* 1 Gray, 317. *Field* v. *Crawford,* 6 Gray, 116 *Dow* v. *Clark,* 7 Gray, 198.

In *Buffum* v. *Chadwick*, 8 Mass. 103, the court decided, that where a note was made to the plaintiff, describing him as agent of the Providence Hat Manufacturing Company, the action could be maintained by him, although the objection was suggested that he was a mere agent, and that the consideration moved from the company alone. They distinguish the case of *Gilmore* v. *Pope*, which was cited by the defendants' counsel, and observe that in that case " the contract was directly with the corporation."

In the case of *Commercial Bank* v. *French*, 21 Pick. 486, it was decided, that a promissory note made to " the cashier of the Commercial Bank," the note being the property of the bank, was a contract with the bank, on which the corporation might sue. *Gilmore* v. *Pope* is cited as sustaining the decision; but the case rests upon the doctrine that, by a just construction of the language used, as terms of description, the contract was made with the bank.

In *Eastern Railroad* v. *Benedict*, 5 Gray, 561, it was determined that upon an order payable " to D. A. Neale, president of the Eastern Railroad Company," the corporation, being the real party in interest, might sue in its own name. The authorities were fully examined and discussed, and we are satisfied with the correctness of the decision; but no question arose in that case whether the action might not have been maintained, if brought in the name of the payee.

In *Gunn* v. *Cantine*, 10 Johns. 387, the action was upon a receipt given to an attorney, upon an undertaking to collect the money due upon a contract belonging to his principal; but the court notice the fact that there was no express promise to pay the money collected to the attorney; and only decide that the promise implied by law from the instrument was to the principal; a view consistent with that which we have suggested in regard to the case of *Gilmore* v. *Pope*.

There is a class of cases in which it has been held that a promise to a public officer, in his official capacity, must be enforced by a suit in the name of the public body for which he acts. *Pigott* v. *Thompson*, 3 Bos. & Pul. 147. *Irish* v. *Webster*,

5 Greenl. 171. *Garland* v. *Reynolds*, 20 Maine, 45. The principle' is analogous to that which holds that one who signs a contract as a public officer is not personally responsible upon it; though the ground upon which it is put is, that a just construction of the contract makes it the contract of the principal.

In *Thatcher* v. *Winslow*, 5 Mason, 58, Mr. Justice Story held, that an agent, not having any legal or equitable interest in a promissory note, cannot sue as indorsee upon it. The only authorities which he names in support of the doctrine, are *Gunn* v. *Cantine* and *Gilmore* v. *Pope*, before cited. If the effect of the decision is merely this, that putting a promissory note into the hands of an agent, indorsed in blank, without any authority express or implied to him to bring a suit upon it, will not constitute such a transfer of the note to him as will support an action upon it in his name, we have no doubt of its correctness. *Sherwood* v. *Roys*, 14 Pick. 172.

But in Story on Agency, § 394, it is said that " if a negotiable note is indorsed in blank, and sent by the owner to his agent for collection, the agent may sue thereon in his own name as indorsee ; " and in § 161, that " if an agent should procure a policy of insurance in his own name, for the benefit of his principal, the agent, as well as the principal, may sue thereon." In §§ 392, 393, 395, 396, the doctrine is stated in the broadest terms, that whenever the contract is made in writing expressly with the agent, and imports to be a contract personally with him, and also where he is the only known or ostensible principal, and therefore is, in contemplation of law, the real contracting party, he may sue in his own name. And such is the general current of the authorities ; and we are satisfied that, to support an action upon an express promise, it is in general immaterial whether the consideration move from the promisee or from another.

In *Baxter* v. *Read*, cited in Dyer, 272 *b, note*, it was " adjudged, that where Baxter had retained Read to be miller to his aunt, at ten shillings per week, this will support an action on the case ; for although it is not beneficial to Baxter, it is chargeable to Read."

Colburn *v.* Phillips & others.

In *Goodwin* v. *Willoughby*, Pop. 178, Doderidge, J. says: "If a stranger saith, 'Forbear such a debt of J. S. and I will pay it,' it is a good consideration for the loss to the plaintiff."

In *Sargent* v. *Morris*, 3 B. & Ald. 277, it was held, that the consignee could not sue for damage to goods shipped on board the defendant's vessel, the consignee being only the agent of the consignors, and having no present interest in the goods at the time of the injury. But there the bill of lading stated the receipt of the goods from the consignors, and undertook "to deliver the same to you, and in your name, according to custom and usage, to Mr. Sargent or his assigns, paying freight," &c.

In *Sims* v. *Bond*, 5 B. & Ad. 393, and 2 Nev. & Man. 616, Lord Denman asserts, that "it is a well established rule of law, that where a contract, not under seal, is made with an agent in his own name, for an undisclosed principal, either the agent or the principal may sue upon it."

In the case at bar, the contract was with the plaintiff in his own name, no other principal was disclosed, and it was executed on his part. We think the promise of the defendants was upon a sufficient consideration, and may be enforced by the person to whom it was expressly made.

2. It is said the declaration does not charge the defendants with the direct consequence of their breach of agreement, but for an excess of freight paid by the plaintiff. The contract and the breach of contract are expressly set forth. The damages occasioned thereby may or may not be correctly claimed or estimated, and it is no cause of demurrer.

3. It is objected that the declaration charges the defendant with the costs and expenses of the suit in admiralty. But this is only a statement, in part, of the damages; and although mistaken, does not affect the right to maintain the action.

4. The declaration does not state any demand upon the defendants for an allowance for the excess of freight, or a demand on them for the stone. No such statement is necessary. The gist of the action is the omission to furnish a vessel to carry the stone at the agreed price. When the defendants had shipped the stone at a higher rate, they had broken the contract declared on. *Demurrer overruled, and case remitted*